UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

TAO LUO, PENG HE & MENGMING LUO,
Plaintiffs,

v.

ALBERTO R. GONZALES, et al.,

Defendants.

Case Number: 1:07-CV-00395

DECLARATION

I, the undersigned officer of the Texas Service Center, United States Citizenship and Immigration Services, pursuant to 28 U.S.C. 1746, do hereby declare the following under the penalty of perjury:

DECLARATION OF NABOONE PURIPONGS

I, Naboone Puripongs declare as follows:

1. I am employed by the United States Citizenship and Immigration Services (USCIS") as a Supervisor with the Texas Service Center ("TSC"), in Dallas, Texas. I make this declaration based on my personal knowledge and my review of official documents and records maintained by the USCIS and information provided by other Service Centers that have similar procedures and processes. This case was transferred by the Vermont Service Center to the Texas Service Center and some of the initial processing was completed in Vermont. If called to testify, I could and would do so competently.

2. This declaration is submitted in support of Defendants' motion to dismiss. This declaration provides a factual summary of the agency's adjudication policy as well as a review of the plaintiff's file.

3. When an adjustment application or other application seeking an immigration benefit on behalf of an alien is filed with USCIS, the agency conducts numerous mandatory criminal and national security background checks. These checks are conducted both to enhance national security and ensure the integrity of the immigration process. These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. Pursuant to established agency policy, all required security checks must be completed prior to adjudication of the application.

4. The attached Fact Sheet explains the different types of checks that must be completed. (See Fact Sheet, dated April 25, 2006, a true and correct copy is attached as Exhibit 1). The checks include the FBI name check, FBI fingerprint check, and the DHS-managed Interagency Border Inspection System (IBIS). The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement agencies. Although in the majority of FBI name checks no matches are found, some cases involve complex or highly sensitive information and cannot be resolved quickly. The IBIS system contains records and information from more than twenty federal law enforcement and intelligence agencies including the Central Intelligence Agency (CIA), FBI and other divisions of the U.S. Department of Justice, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies. It is a multi-

2

agency effort with a central system that combines information from these various sources and databases to compile information regarding national security risks, public safety concerns, and other law enforcement concerns. IBIS provides, but is not limited to, information related to persons who are wanted criminals, persons of interest in the context of national security, and other derogatory information, including adverse immigration history. While the results of an IBIS query are usually available immediately, in some cases information found will require further investigation. Finally, FBI fingerprint checks provide information relating to criminal background within the United States. Results are usually received within days, and while the vast majority results in no criminal record, positive results may have a direct bearing on the eligibility of an applicant for the immigration benefit being sought.

5. Once USCIS receives an I-485, a file is opened and an electronic record of that application is created. Much of this initial electronic processing and data entry is automated, including the automatic generation and electronic transmission of an FBI name check request in FBIQUERY, the FBI repository and tracking system for FBI name check requests. Once the initial file creation and processing of an I-485 application is complete, each file is placed on a Just In Time ("JIT") shelf for processing and adjudication in chronological order according to date of receipt.

6. The TSC daily receives about 6,000 pieces of mail, sends 8,000 pieces of mail and has about 2,000,000 active files (Closed files are forwarded to archives). TSC processes many types of applications/petitions and anticipates annual receipts of about 800,000 with about 700,000 anticipated completions. The TSC has more than 51,221 pending employment based I-485s and projects 95,000 by the end of the FY 07.

3

7. Initially, the TSC runs a daily electronic report in the FBIQUERY system for all files on the JIT shelf to confirm the successful transmission of the FBI name check request and to identify those applications that have received responses from the FBI name checks and FD-258 (fingerprints) and are thus ready for adjudication. FBI name check requests that have been received by the FBI but have not yet been completed are indicated by a notation of "Pending" in FBIQUERY. An FBI Name Check that has been completed will be indicated by various entries depending on the result, including No Record, Positive Response, etc.

8. This report will also identify those petitions/applications that have received a "No Data" or "Error" response in FBIQUERY indicating a problem with transmission of the name check request from USCIS to the FBI. If such a problem is reported, the FBI name check requests will then be initiated a second time and resent manually or electronically to the FBI for a response. In this way USCIS ensures that the FBI has in fact received all requests for name checks.

9. All files on the FBI Name Check Shelf are audited regularly in order to identify those in which a response from the FBI has been received. In this manner the agency ensures that as FBI responses are received, files are expeditiously released for adjudication. FBIQUERY reports do not provide USCIS with any indication as to what information the FBI may have relating to a particular alien, whether an FBI investigation into the particular alien has been undertaken, or whether there are national security concerns relating to that alien.

10. For most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. However, due both to the sheer volume of security checks USCIS conducts, and the fact that USCIS must await responses from the FBI or other relevant agencies that conduct

4

some of the required security checks, some delays on individual applications are unavoidable and may be lengthy. Moreover, in some cases a background or security check will reveal that positive (derogatory) information on the subject alien is possessed by some agency other than USCIS without necessarily revealing the substance of that information. In such cases, USCIS works closely with the other law enforcement and intelligence agencies to obtain all available information concerning the positive result in order to properly evaluate its significance. Even where the FBI or a third agency has provided a final response, a case may still be considered pending where the response requires further investigation or review by USCIS or another agency. It is vitally important to screen thoroughly each applicant in order to resolve all concerns of a law enforcement or national security nature before determining that an individual is eligible for an immigration benefit.

11. USCIS reports the average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times on the date the information is published. Average processing times fluctuate widely and will sometimes even regress for a specific form type due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons. Additionally, not every application will require the same level of inquiry. Some may require a more detailed level of review and or investigation from either the USCIS or other agencies for a number of reasons ranging from the alien's eligibility for the benefit sought to national security concerns. Even when it appears that the adjudication of a particular application is outside the average processing time, this does not establish that the delay is unreasonable or even due to factors within the control of USCIS.

12. The FBI has an established process of processing FBI national security background investigation requests from USCIS chronologically based on the date the request is forwarded. Certain requests can be expedited if they meet specific expedite criteria. However, it is important to note that whenever a particular application or petition receives expedited processing and is moved up in the queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. There is no statutory or regulatory time limit for the adjudication of I-485 that is pending a national security background investigation. The agency's policy for requesting expedited security checks requires that the applicant meet one of the following criteria: (1) military deployment, (2) age-out cases not covered by the Child Status Protection Act and applications affected by sunset provisions, (3) compelling reasons provided by the requesting office, and (4) loss of Social Security benefits or other subsistence at the discretion of the Director. Moreover, an alien who has applied for adjustment of status may apply for and obtain employment authorization for the entire time his or her application is pending. Most applicants for adjustment of status may also apply for and obtain advance parole to enable them to travel abroad during the pendency of their application. Thus, applicants for adjustment of status are not as adversely affected by delays in the adjudication of their applications as are aliens filing for other immigration benefits.

13. In my capacity as Supervisory Adjudications Officer at TSC, I have access to the official files and records of the USCIS. I have reviewed the A-file and system records for plaintiffs Tao Luo, Peng He and Mengming Luo. The record reflects that on August 12, 2004, Tao Luo, Peng He and Mengming Luo filed an application for adjustment of status to permanent resident, Form I-485. After reviewing the information pertaining to Luo, He and

6

Mengming's adjustment of status applications, I attest that USCIS referred this case for lawfully required national security background investigations and that TSC in accordance with the requirements for background investigations is prohibited from adjudicating plaintiff's application. To date, Plaintiffs Tao Luo, Peng He and Mengming Luo's application remains pending the completion of national security background investigations. Once the required national security background investigations are completed, plaintiff's application will be adjudicated. Plaintiff Peng He's application for adjustment of status to lawful permanent resident, I-485 is dependent upon Tao Luo's application and cannot be approved unless and until Tao Luo's application is approved. For this reason USCIS cannot adjudicate plaintiff's I-485 application for adjustment of status until such time as all national security checks and background investigations are complete.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of May, 2007 at Dallas, Texas.

Naboone Puripongs
Supervisory Adjudications Officer
Texas Service Center